M. C. BRASWELL ET ALS. v. PAMLICO INSURANCE AND BANKING COMPANY, H. L. STATON, L. L. STATON, ET ALS.

(Filed 25 September, 1912.)

1. Corporations—Officers—Fraud—Debtor and Creditor—Parties.

An action by a creditor or stockholder will lie against the officers, including the directors of a corporation, for losses resulting from bare fraud or negligence, without his having first applied to the corporation to bring the action.

2. Corporations — Directors—Management—Best Judgment—Liability.

The directors of a corporation are only required to exercise ordinary diligence, intelligence, and judgment in the manage-

ment of corporate business, and are not liable for losses arising from their mistakes, or from the mistakes of subordinate officers therein made.

3. **Banks — Corporations — Voting of Shares — Officers—Control— Fraud—Evidence.**

Evidence tending to show that the defendants were officers of a certain bank which had rightfully acquired shares of stock in a manufacturing company; that the company owed the bank in a large sum; that the shares owned by the bank were voted by the defendant, the cashier of the bank, uniformly with that owned by him and the other defendants, officers of the bank, so as to control the policy of the company over plaintiff's vote as a shareholder therein, is insufficient to be submitted to the jury upon the question of fraudulent conduct on the part of the bank's officers in thus controlling the policy of the corporation, or upon their neglect of the interests of the bank.

4. **Same—Offer to Buy.**

In an action brought against the officers of a bank for voting shares of stock in a manufacturing company uniformly with their own, so as to control the policy of the company against the vote of the plaintiff stockholder therein, there was evidence tending to show that a certain shareholder was endeavoring to acquire a controlling interest, and that he approached the cashier of the bank and asked that the bank make a proposition to sell him its shares; that he was willing to pay par, but that he did not so inform the cashier: *Held,* not sufficient upon the question as to whether the officers of the bank acted fraudulently, solely in their own interest and to the prejudice of the corporation in retaining the stock held by the bank and continuing to vote it with their own shares.

APPEAL by plaintiffs from *Carter, J.,* at April Term, 1912, of EDGECOMBE.

Civil action. From the judgment of nonsuit, plaintiffs appeal.

The facts are sufficiently stated in the opinion of the Court by *Mr. Justice Brown.*

*Bunn & Spruill, Jacob Battle for plaintiffs.*
*G. M. T. Fountain & Son, M. C. Staton for defendants.*

BROWN, J. Complaint in this case embodies several alleged causes of action, and asks for quite a variety of relief, and

might strictly be regarded as multifarious. As the plaintiffs, however, have abandoned all their causes of action but one, it is not necessary that we should consider the character of the complaint, especially as no such point is made by the defendant. We merely advert to it in order that it may not be regarded as a precedent.

The cause of action upon which the plaintiffs now rely is founded in tort and is based upon the allegation that the defendants Staton, Zoeller, and Cobb, officers and directors of the defendant bank, were guilty of fraud and negligence in the conduct of the business of the bank.

It is settled that an action can be brought by a creditor or stockholder against the officers, including directors, of a corporation, for losses resulting from their fraud or negligence, without having first applied to the corporation to bring such action. *Soloman v. Bates,* 118 N. C., 311; *White v. Kincaid,* 149 N. C., 415.

In furtherance of this allegation the plaintiffs offer to submit these issues:

1. Did the defendant corporation, under the control of the individual defendants, purchase, or continue to hold, the one hundred and seventy-five shares of Tarboro Cotton Factory stock for their own personal ends and to the prejudice of the corporation?

2. If so, what damage has the corporation sustained?

We are of opinion, upon a review of the evidence, that his Honor properly sustained the motion to nonsuit. It appears that the defendants were stockholders in the Tarboro Cotton Factory, owning one hundred and fifty shares together, and that the defendant bank owned one hundred and seventy-five shares, which had been hypothecated by one Nash as collateral security for a debt of $12,000, upon which he had made default in payment.

It also appears that the bank had acquired this stock in consideration of said debt, and that at the stockholders' meeting of the cotton factory this stock was generally voted by Mr. Cobb as cashier of the bank, who voted uniformly with the Statons, and they could not control the policy of the factory

without voting the shares of the bank. It appears furthermore that the Tarboro Cotton Factory owed the bank $35,000.

It is contended that the defendants refused to sell these shares to H. C. Bridgers because they desired to retain them in order to protect their individual interests in the cotton factory, and that in so doing they were guilty of a fraud. We are unable to see anything in the evidence to support such contention. Bridgers was endeavoring to get sole control of the cotton factory. He testifies that he approached Cobb with a view to buying the bank's shares, and asked him to name a figure at which they would sell their holdings, and that Cobb replied that he would not name a figure unless Bridgers would agree to take the holdings of all the Statons in addition.

Bridgers does not say that he made Cobb any offer, but only asked him to name a figure. He states, however, that he was willing to pay par for the stock at that time. There is no evidence that Bridgers ever made a definite proposition to the board of directors to purchase the stock, and there is nothing to warrant the assumption that the directors were actuated by any sinister purpose.

Inasmuch as the cotton factory owed the bank $35,000, the directors may have thought that it was the part of wisdom to retain control of the management of the factory, and not to put it absolutely in the hands of Bridgers. We see nothing in this which suggests a fraudulent purpose or a negligent disregard of the interests of the bank. Assuming that the sequel showed that the directors made a mistake, they are not infallible, and are not held liable for honest mistakes made in the exercise of their authority. 2 Cook on Corporations, pp. 2071-2.

Directors of corporations are not guarantors that they will make no mistakes in the management of the corporate business. They do not insure the corporation against loss arising either from their own honest mistakes or from the mistakes of subordinate officers. They are required to exercise reasonable care and business judgment, but nothing further than this. They generally serve without pay, and usually, by reason of their interest in the company, have a direct concern in its

welfare. The law requires them to do no more than exercise ordinary diligence, intelligence, and judgment in the management of the corporate business. *Briggs v. Spaulding,* 141 U. S., 132; 3 Cook on Corporations, sec. 703; *Soloman v. Bates, supra.*

The judgment of the Superior Court is
Affirmed.